CAPELLE, Respondent, vs. ROYAL INSURANCE COMPANY OF LIVERPOOL and others, Appellants.

*April 26—May 24, 1910.*

*Fire insurance: Evidence of previous fire.*

In an action upon an insurance policy for the amount of a loss sustained by fire, where no fraud in the causation of the fire was charged, evidence that plaintiff had suffered a fire of small amount about a year prior to the one in question was properly excluded.

APPEAL from a judgment of the circuit court for Kewaunee county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

A consolidated action against six insurance companies for the appraised amount of partial loss by fire. Evidence tended to show that plaintiff, with aid of his family, owned and ran a general store at Algoma with a stock approximating $7,000; that during the night of the 12th of September, 1908, a small fire occurred in the store, which, with the

devastating aid of the local fire department, caused a complete destruction in value of over $1,600 worth of stock, and damage to the remaining goods to the amount of nearly $900. Plaintiff at first gave notice of the fire asserting loss to the amount of $5,000. Pretty immediately thereafter he shoveled into the stove an amount of what he describes as dirt and ashes containing unidentifiable scraps of cloth, the remnants of burned. clothing. After the arrival of the companies' adjusters and their inspection of the premises, and after their command and direction to clean up his store, he placed a considerable amount of merchandise, the value of which was entirely destroyed, in boxes and stored it in the cellar, of which fact the companies' adjusters had knowledge. He made proofs of loss asserting the amount of property totally destroyed in value at between $1,600 and $1,700, and damage to the rest at $1,800 or $1,900. Thereafter, and after sixty days from the fire, and before any demand for an appraisement, he advertised and made a considerable fire sale, including much of the damaged goods as well as the undamaged. On the 20th of November the defendants demanded appraisement and nominated an appraiser, and the plaintiff nominated one Hagarty as his appraiser, with whom he had no other relations than a business intimacy and friendship resulting from purchases of goods from him as a traveling salesman. The appraisers met on December 5th, and, after some difficulty, selected one Wilbur as umpire. They then, on December 7th, commenced their appraisal. They appear to have substantially agreed on the amount of totally destroyed property in accordance with the proofs of loss, since there was no means except the sworn statement of the plaintiff to ascertain either the amount or values of such goods. When they approached the question of allowance for partial loss they found that the plaintiff had separated damaged goods into three classes: First, that on which the damages amounted to seventy-five per cent. of the full value; second,

a class of fifty per cent. damages; and third, a class of twenty-five per cent. damages. They appear not to have seriously disagreed with plaintiff's estimate of the percentage of damage, but on counting or measuring up goods of a certain description upon which seventy-five per cent. damages were claimed they found less goods than claimed in the proofs of loss. This was explained by the fact that portions of such goods had after the making of the proofs of loss been sold at the fire sale. The defendants' appraiser then took the position that the seventy-five per cent. of the damage could be computed only upon the goods remaining on hand and in sight. Hagarty, the plaintiff's appraiser, insisted that, in the absence of any evidence to the contrary, the plaintiff's oath as to the quantity of those goods which existed after the fire was competent and sufficient evidence. On this division of opinion the umpire decided with Hagarty. Substantially throughout the subsequent attempts at appraisal this difference of opinion persisted, and the umpire's vote was cast in favor of accepting the sworn testimony of the plaintiff as sufficient to establish the amount of goods upon which the percentage of damage had been done. This led to certain other disputes as to how far it was necessary to measure or count the goods in the store, upon nearly all of which questions the umpire, being called in, agreed with Hagarty. The appraisal was made in accordance with that method, but evidently differed from the proofs of loss, being some $1,000 or $1,200 less. The places of variation are not disclosed by the evidence. After the appraisers had spent a day examining the damaged stock, a request or demand was made upon them by one of the adjusters to suspend, for the reason that the companies were going to examine the plaintiff under the policy and they wanted the appraisers to attend and listen to that examination. This Hagarty refused to do, as he was anxious to complete the appraisal of the damage and had no knowledge of the field of exploration intended by this hear-

ing. The hearing, by the way, was protracted from December 8th to the following April, and but a small part of it was addressed to the values or quantities of goods or amount of damage.

The defenses set up were (1) fraud in claiming too much by the proofs of loss; (2) that Hagarty was not competent and disinterested, but was partisan; (3) that he acted improperly as appraiser in accepting the plaintiff's sworn statement and declining to properly investigate loss, quantities, or values, and in refusing to hear evidence offered by the defendants to the appraisers with reference thereto; (4) that plaintiff fraudulently altered his inventory of the year before so as as to mislead the appraisers; (5) that he fraudulently sold and disposed of goods for the purpose of making appearance of greater loss and fraudulently refused information to the appraisers; (6) that he fraudulently concealed in his basement certain goods and represented the same to have been totally destroyed. The jury by special verdict found that plaintiff did not knowingly make any false entries as to quantity or value of insured goods either in his inventory of January, 1906, or in the proofs of loss; that he had no fraudulent intent to conceal the goods stored in the basement; that he did not represent that all the goods on which a total loss was claimed were burned to ashes; that in making sales he had no fraudulent intent; that the value of the goods stored in the basement was wholly destroyed by the fire; that the $2,541.17 awarded by the appraisers did not exceed the actual loss caused by the fire; that Hagarty did not intentionally act unfairly toward the defendants, or with partiality toward the plaintiff, in performing his duty as appraiser; and that Hagarty did refuse to suspend proceedings on the appraisal in order to attend upon the examination of the plaintiff by the attorneys for the companies. No other findings appear to have been requested. Defendants filed motions for judgment on the uncontradicted evidence not-

withstanding the verdict, or, in lieu, for a new trial.    Plaint-
iff made motion for judgment upon the verdict.    Where-
upon judgment was entered in plaintiff's favor for the
amount of the award, from which the defendants appeal.

For the appellants there was a brief by *Wigman, Martin
& Martin, O'Meara & O'Meara, Humphrey Pierce,* and
*Francis S. Bradford,* and oral argument by *J. F. Martin.*

For the respondent there was a brief by *Minahan & Mina-
han* and *M. T. Parker,* and oral argument by *V. I. Minahan.*

DODGE, J.    With one exception, the whole of appellants'
assignments of error and brief are devoted to asserting and
arguing the fatal effect upon plaintiff's recovery of various
alleged acts and circumstances, such as fraud in making and
proving his claim, destruction of certain remnants of burned
goods, concealment from both appraisers and adjusters of
certain other goods claimed to have been entirely destroyed
in value, disposal of goods by sale before the appraisal, par-
tisan and unfair character of the appraiser selected by plaint-
iff, and arbitrary and partial action of the appraisers in per-
forming their service.    Some of these legal contentions are
undoubtedly sound in the abstract, others perhaps more
doubtful.    But there exists no necessity to discuss or decide
upon them in this case, for the reason that none of the facts
upon which they are predicated are proved without conflict,
and all of them are negatived either by express finding of the
jury in the special verdict, or, so far as they are material and
in issue, by a finding in favor of the plaintiff impliedly made
by the court pursuant to sec. 2858*m,* Stats. (ch. 346, Laws
of 1907).    For such findings, whether by the jury or court,
we find at least so much support in the evidence that we can-
not reverse them on appeal under the well-established rules
as to the conclusiveness of decisions on fact by the trial court.

The one detailed assignment of error is upon excluding
evidence that plaintiff suffered a fire of small amount about a

year previous to the one involved in this action.   We can find no issue in the pleadings to which such evidence could have been relevant.   There is no charge of fraud in causation of the fire, and the evidence against the same is so clear and definite that the admission of this remote fact, we are clear, could not have had any effect upon the jury.   We think the court rightly ruled that it was immaterial and irrelevant, and we find no error in the record.

By the Court.—Judgment affirmed.